## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PHILLIP DEAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 5:05-CV-1706-VEH** |
| | ) | |
| **SHERIFF MIKE WELLS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION ON DEFENDANTS'
## MOTION TO DISMISS

## I. <u>INTRODUCTION AND BACKGROUND</u>

This is an action where *pro se* plaintiff Phillip Dean ("Dean") has brought federal constitutional claims under 42 U.S. C. § 1983 and supplemental jurisdiction claims under 28 U.S.C. § 1367 against Jackson County, Alabama; Jackson CountyCircuit Judge W. W. Haralson ("Haralson," "Judge Haralson"); Jackson County Sheriff Mike Wells ("Sheriff," "Wells"), and the following deputy Sheriffs or Sheriff's investigators: Eric Woodall, Bart Buchanan, Terry McCracken, John McCray, Ernie Gomez (collectively "deputies").

All of the claims against the Circuit Judge Haralson have been dismissed *pro tanto*. His actions will be discussed only as are necessary to explain Dean's claims or the actions of the remaining Defendants.

Before the Court is the Motion to Dismiss ("Motion") filed by the remaining Defendants: Jackson County, the Sheriff and his deputies and investigators ("deputies" unless the context indicates otherwise). A reference to "Defendants" shall include all remaining Defendants unless stated otherwise.

Dean's complaint alleges violations of 42 U.S.C. § 1983, violations of the First, Fourth and Fourteenth Amendments to the United States Constitution. Dean has sued Sheriff Wells and his deputies individually and in their official capacities; he also asserts a § 1983 claim against Jackson County. Dean seeks money damages.

Dean, in his response to the Defendants' Motion, admits that the state law claims are due to be dismissed, and they will not be further discussed. The state law claims are for assault and battery, false arrest, false imprisonment, outrage and abuse of process. The Motion to Dismiss the state law claims brought under the court's supplemental jurisdiction, 28 U.S.C. §1367, will be **GRANTED**.

That leaves for decision the Motion to Dismiss of Jackson County, Sheriff Wells, and his deputies. I begin by reviewing relevant authority from the Supreme Court and this Circuit on the appropriate standards governing the Motion, the law of immunity and qualified immunity in actions arising under 42 U.S.C. § 1983. Then I apply that law to the facts stated in Dean's Complaint, drawing all inferences therefrom in Dean's favor. Having done so,

2

1)     the claims against the Sheriff and his deputies acting in their official capacities will be dismissed because they are arms of the State of Alabama and a suit against them is a suit against the State of Alabama, and therefore barred by the Eleventh Amendment;

2)     the claims against the Sheriff and his deputies acting in their individual capacity, I conclude that Dean's Complaint falls short of establishing the violation of a clearly established right by the Sheriff and his deputies and are shielded by qualified immunity;

3      in the alternative, any constitutional injury sustained was *de minimis*; and

4)     Dean has not stated a claim against Jackson County

Accordingly, the Defendants' Motion to Dismiss will be **GRANTED**.

## II. <u>STANDARD OF REVIEW FOR MOTION TO DISMISS</u>

We accept the facts of the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* Dismissal pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples,* 256 F.3d at 1283-84 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

*Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004).

## III.  <u>THE MOTION TO DISMISS</u>

Defendants have challenged the sufficiency of the complaint under F.R.Civ.P. 12(c) and 12(b)(6).

A.  <u>F.R.Civ.P. 12(c)</u>

3

Rule 12(c) applies, on its terms, "after the pleadings are closed . . . " This Court has issued a Uniform Initial Order requiring the parties, *inter alia*, to conduct a Rule 26 planning meeting, going on to say that the Court would thereafter enter a scheduling order. One of the items addressed in this Court's scheduling order (as is the uniform practice of the judges of this District) is setting a deadline for the amendment of pleadings. This deadline has not been set, so it could not have elapsed. The pleadings are still open, and, to the extent that the Motion is filed pursuant to Rule 12(c), such Motion is premature and is hereby **DENIED**.

B. <u>F.R.Civ.P. 12(b)(6)</u>

1. <u>Heightened Pleading Standard</u> - Because all defendants except Jackson County are entitled to raise the defense of qualified immunity[1], Dean's Complaint is subject to the "heightened pleading" standard. *Swann v. Southern Health Partners*, 388 F.3d 834, 838 (11th Cir. 2004) (heightened pleading remains the law of this Circuit in § 1983 actions against defendants entitled to claim immunity). Dean's Complaint meets that standard in its description of the factual events that he says violated his rights, setting out every fact that he contends supports his § 1983 claims against the defendants, and he also sets forth the constitutional provisions he says were violated. The heightened pleading standard claim is denied.

---

[1] The Complaint alleges these Defendants are law enforcement officers.

2. <u>Motions to Dismiss Under § 1983</u> - The defense of qualified immunity may be raised and addressed on a motion to dismiss and will be granted if the "complaint fails to establish the violation of a clearly established right". *Snider v. Jefferson State Community College*, 344 F.2d 1325 (11th Cir. 2003) (citations omitted). Whether the complaint alleges the violation of a clearly established right is a question of law, subject to *de novo* review on appeal, accepting the facts alleged as true and drawing all reasonable inferences in the plaintiff's favor. *Id*.

This does not mean that because Dean says his rights were violated, they were. The court's task is to take Dean's factual allegations and the reasonable favorable inferences that can be drawn from them, and then determine as a matter of law whether they state a violation, by these defendants, of a clearly established right.

## IV. **DEAN'S FACTUAL ALLEGATIONS**

The facts alleged against (dismissed Defendant Haralson and) the Defendants, which the Court accepts as true for purposes of this Motion, are as follows. Haralson presided over a domestic relations case between Jennifer Bonds and Dean involving, in part, custody of their children. Judge Haralson issued a ruling which Dean with which Dean strongly disagreed ("the Order"). Haralson's Order denied Dean's attempt to change custody of the parties' children from Bonds to Dean.

The Order became final and the forty-two (42) days for the filing of a Notice

of Appeal passed.  Thereafter, Dean displayed four signs in his yard which said the following:

1. Our court system is a joke.

2. Judge Haralson said that my minor children, 13 & 15 need to be with their mother even though she let [sic] them smoke pot, take drugs & run wild.

3. This tells my kids its [sic] ok to do drugs.

4. We wonder why so many kids are on drugs.

Judge Haralson learned of the signs.  On August 18, 2003, Haralson sent Sheriff's Investigators Eric Woodall and Bart Buchanan to Dean's residence to read the signs over the phone to him.  After hearing the contents of the signs, Haralson ordered Woodall and Buchanan to remove the signs and bring them to him.  Later on August 18, 2003, Haralson signed an Order holding Dean in direct contempt of court and ordering Dean to be arrested and held without bond.  Later that day, Deputies Terry McCrackin and John McCrary arrested Dean at his home pursuant to Judge Haralson's order.

Dean was taken to the Jackson County jail, strip searched, and held without bond for twenty-six (26) hours.  He was given no food or water, and drank from the toilet.  He was not allowed to use the phone.  He was made to wear a dirty jail uniform that had been worn by another inmate.

The next day, Dean was brought to the Jackson County courthouse  shackled from head to toe, with chains from his feet to his waist.  During this process, Dean was pushed and shoved by Gomez, the jailer having custody of him. brought to court by Gomez as a shackled prisoner, paraded into three [court]rooms, and shoved by Gomez in the courthouse hallways before finally appearing before Haralson.

Dean alleges he was arrested without a warrant.  I accept this as true.  I also accept for purposes of analysis that he was arrested without probable cause, because his conduct was not, as a matter of law, direct contempt.  Direct contempt is conduct occurring in the court's presence, and Dean's signs were in Dean's front yard, not in the courthouse.  Further, I find that Dean's signs, which were more harmful to Dean's children than to Judge Haralson, were nevertheless protected speech under the First Amendment, and that it is common knowledge in this nation that you cannot be imprisoned for speech where, as here, the speech is about a public figure and the speech itself is published entirely through signs.  Having said that, Judge Haralson is no longer a defendant, and it was Judge Haralson who Dean says ordered his arrest without probable cause, his being held in jail without bond, and, inferentially, caused the other treatment of Dean described above .

## V.  CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY

The Eleventh Amendment to the Constitution bars federal courts from

entertaining suits against states.   The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., amend. XI.

Although, by its terms, the Eleventh Amendment does not bar suits against a state in federal court by its own citizens, the Supreme Court has extended its protections to apply in such cases.  *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *see also Manders v. Lee,* 338 F.3d 1304, 1308 n. 8 (11th Cir.2003) (*en banc*).

As the Eleventh Circuit explained in its *en banc* decision in *Manders v. Lee, supra*, the law is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when an 'arm of the State' is sued."  *Id.* at 1308.  The more difficult question-whether the entity sued is an arm of the state-"must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."  *Id.*  As the Supreme Court has explained in determining whether a sheriff is a state or county policymaker for purposes of a § 1983 action, "the question is not whether [the sheriff] acts for [the state] or [the county] in some categorical, 'all or nothing' manner," but rather whether the sheriff

is acting for the state "in a particular area, or on a particular issue." *McMillian v. Monroe County,* 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (holding that Alabama sheriff was policymaker for the state, not for the county).

To determine whether a defendant, while engaged in the relevant function, acts as an arm of the state, the Court of Appeals has set out a four-factor inquiry, taking into account:  (1) how state law defines the entity;  (2) what degree of control the state maintains over the entity;  (3) the source of the entity's funds;  and (4) who bears financial responsibility for judgments entered against the entity.  *See Manders,* 338 F.3d at 1309.  When the defendant is a county sheriff, the determination is dependent on the law of the state in which the sheriff operates, since "states have extremely wide latitude in determining their forms of government and how state functions are performed." *Id.* at 1309 n. 10;  *see also McMillian,* 520 U.S. at 786, 117 S.Ct. 1734 ("[O]ur inquiry is dependent on an analysis of state law.   This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy.   But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."  (citations omitted)).

The relevant "function" in this case for the Sheriff is the enforcement of

Haralson's court order, whether the conditions of Dean's confinement constituted cruel and unusual punishment in violation of the Eighth Amendment, and whether Dean's treatment in the Jackson County courthouse the day following his arrest constituted excessive force.

### A.  Sheriff Wells - Official Capacity

In Alabama, the office of Sheriff is a state constitutional office, vested with the immunities of a state official as an agent or "arm of the state." *McMillian, supra; see also* Alabama Code § 36-22-3.  Further, state immunity immunizes the sheriff in his official capacity from liability for money damages.  *Employees of the Montgomery County Sheriff's Dep't v. Marshall*, 893 So.2d 326 (Ala. 2004).  *Parker v. Amerson,* 519 So.2d 442, 442-43 (Ala.1987).  A suit against a sheriff in his official capacity is essentially a suit against the State.  *Id*. at 445.

Wells' duties under state law clearly encompass serving court orders, making arrests pursuant to court orders, operating and maintaining the county's jail, and (by necessary implication) transporting prisoners from the jail to court.  While Haralson's order was clearly erroneous for the reasons noted above, Wells was acting as an officer, or arm, of a state Circuit Court when he had Dean arrested and incarcerated. Assuming Haralson's Order was wrong, Wells was nonetheless duty bound to execute the Court's Order. Accordingly, Dean's claims against Sheriff Wells in his *official*

capacity as Sheriff are due to be dismissed on the grounds of Eleventh Amendment immunity.

B. <u>The Deputies - Official Capacity</u>

In *Carr v. City of Florence*, 916 F.2d 1521, 1525 -26 (11th Cir. 1990), the Court of Appeals, held that, in Alabama, deputy sheriffs are legally extensions of their sheriffs and are likewise considered officers of the State of Alabama.  This means that suits against them are suits against the State of Alabama, and are likewise barred by the Eleventh Amendment.

Further, the jailers Dean has sued are likewise immune in their official capacity.  *Lassiter v. Monroe County, Ala.*, 116 F.3d 1419m 1429 - 30 (11th. Cir. 1997).

## VI.  <u>The Individual Claims & Qualified Immunity</u>

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks and citations omitted).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id*. at 1357-58.

The Eleventh Circuit, in *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 -1267 (11th Cir. 2004), reviewed at length the legal analysis to be followed in determining whether a state official was acting within his discretionary authority:

> Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. *See 1266 Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties *and* within the scope of this authority." (emphasis added)).

> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

> Consider the first prong of the test--whether the official is engaged in a legitimate job-related function. In *Sims v. Metropolitan Dade County,* 972 F.2d 1230 (11th Cir.1992), "we did not ask whether it was within the defendant's authority to suspend an employee for an improper

reason; instead, we asked whether [the defendant's] discretionary duties included the administration of discipline." *Harbert,* 157 F.3d at 1282. Similarly, in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities. *See, e.g., Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997). Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description.

Of course, we must be sure not to characterize and assess the defendant's act at too high a level of generality. Nearly every act performed by a government employee can be described, in general terms, as ostensibly "furthering the public interest." If we jump to such a high level of abstraction, it becomes impossible to determine whether the employee was truly acting within the proper scope of his job-related activities. Consequently, we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use *excessive* force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests. *See, e.g., Ferraro,* 284 F.3d at 1194 (holding, in an excessive force suit, "there can be no doubt that [the police officer defendant] was acting in his discretionary capacity when he arrested [plaintiff]").

After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function--that is, pursuing his job-related goals--in an authorized manner. The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a degree of protection only when exercising powers that legitimately form a part of their jobs. *See, e.g., Harlow,* 457 U.S. at

819 & n. 34, 102 S.Ct. at 2739 & n. 34 (limiting the availability of qualified immunity to situations where "an official's duties legitimately require action" and to "actions within the scope of an official's duties"). Each government employee is given only a certain "arsenal" of powers with which to accomplish her goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

Employment by a local, county, state, or federal government is not a *carte blanche* invitation to push the envelope and tackle matters far beyond one's job description or achieve one's official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity.

370 F.3d 1252, 1265 -1267.

"Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.

The Supreme Court has established a two-part test to determine the applicability of qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly

14

established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The "unlawfulness must be apparent" under preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court said "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. at 202. Hence, if it is not "clear" that conduct is unlawful, qualified immunity is to be applied. An officer is entitled to immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227 (1991).  To deny immunity, Dean must affirmatively demonstrate that "no reasonable competent officer would have" acted as defendants did. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Accepting the allegations in the Complaint as true, Dean raises issues of unlawful arrest and incarceration, cruel and unusual punishment, and excessive force. He also raises abuse of process, harassment (3rd degree assault under Alabama law),

and inappropriate conduct by nearly every state official involved.

If the issues were the appropriateness of the defendants' conduct, Dean would have much to argue with. It's not. Applying the *Holloman* analysis to the facts set out in the Complaint, with all favorable inferences drawn in Dean's favor, still leads to but one conclusion: Dean has not stated a § 1983 cause of action against the Sheriff or any of his deputies.

1. Unlawful arrest

With a couple of exceptions, the Sheriff and his deputies were following the order or direction of a state Circuit Judge. The orders or directives may have been motivated by arrogance or ignorance, and the arrest order issued without probable cause for conduct protected by the First Amendment. But neither Wells nor his deputies issued the arrest order or the direction that Dean be held without bond. It was and is clearly within their duties to execute court orders, including orders for arrest. I find no basis for their having a duty to make an independent evaluation of what was, as far as they are concerned, a valid Order. It was valid because Haralson made it. They weren't ordered to do something they knew the law forbids, like beat Dean up, or throw him in a cell with an inmate known to assault everyone within reach. It would be asking these defendants to not just know the intricacies of the law of contempt and the First Amendment, but to violate a direct Order from a judge with

16

jurisdiction to enter that Order.

Judge Haralson is no longer a defendant, and the allegations against the sheriff and his deputies acting in their individual capacities do not make out a constitutional claim under 42 U.S.C. § 1983.  Dean's allegations, accepted as true in deciding a 12(b)(6) Motion to Dismiss, show the deputies and jailer engaged in everyday law enforcement activities: making arrests, keeping those in jail who cannot make bond or are not given bond, operating the county jail, and transporting prisoners to court. None of these activities makes out a violation of Dean's constitutional rights.

2. Eighth Amendment

The Eighth Amendment forbids the imposition of cruel and unusual punishment.  A prison official violates the Eighth Amendment through "the unnecessary and wanton infliction of pain". *Farmer v. Brennan*, 511 US. 825, 835, 114 S Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).

Earlier this year, the Eleventh Circuit joined other circuits in recognizing that repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment. *Boxer v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (citations omitted).  The *Boxer* court, following the Second Circuit, also concluded "that there is an objective component of the inquiry, which requires that the injury be 'objectively, sufficiently serious', and a subjective component, which requires the

17

prison official have a 'sufficiently culpable state of mind'". *Id.*, *citing Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Circuit 1997); *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (citation and internal quotation marks omitted); *see also Branham v. Meachum,* 77 F.3d 626, 630 (2d Cir.1996).

Taking the second component first, I have little doubt that Dean's jailors possessed the sufficiently culpable state of mind required to satisfy the subjective test. Dean was taunted, threatened with a month's confinement, and, for lack of a better description, "perp walked" around the courthouse[2], and a jury could infer that Dean's jailors did these things intentionally to give Dean a message: don't make the Judge mad.

Under the objective standard, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

Under Circuit precedent, an Eighth Amendment injury, one rising to the level of cruel and unusual punishment, is actionable where the injury is "objectively, sufficiently serious: only if there is  more than *de minimis* injury.  *Boxer v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), *citing Johnson v. Breeden*, 280 F.3d 1308, 1321

---

[2]  The term comes from a practice used in some jurisdictions where law enforcement, always in the presence of the press, walks the recently arrested person, in handcuffs, on the way to a court hearing, with the (unstated but obvious) goal of presenting a photo opportunity for the press for later use by the press.  It is particularly popular in white collar crime arrests.

(11th Cir. 2002).  Dean's facts fail this test.  His complaints about the conditions of his confinement, while demonstrating deliberate indifference to his need for food and water, do not rise to the level of a constitutional wrong because they were short lived. Assuming, as I do, that Dean was treated improperly, the length of his incarceration combined with the absence of any specific allegation of physical or emotional or mental harm to him from his incarceration make any injuries sustained *de minimis*, and therefore qualified immunity applies to defeat them.  What is missing are facts showing that the deprivations caused by the conditions of confinement were sufficiently serious.  *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). Assuming his jailers acted with malice, the lack of food or water for twenty-six (26) hours does not, in my view, rise to the level of a constitutional wrong.

3.  Excessive Force

Claims involving excessive force are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865(1989).  This Circuit applies the *de minimis* rule in cases involving excessive force and "qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the position of the defendant officer] to conclude the force was unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir.1993), modified 14 F.3d 583 (11th Cir.1994); *Nolin v. Isbell*,

207 F.3d 1253, 1255, 1258 - 1259 (11ᵗʰ Circuit 2000) (reaffirming the *de minimis* rule). Dean's allegations do not rise to this level, and therefore these defendants are entitled to the qualified immunity defense. Put another way, they may have been acting unprofessionally, but that doesn't make their conduct unconstitutional.

In summary, Dean alleges a series of incidents, none of which standing alone make out a § 1983 claim, and I do not think I can appropriately "stack" them and say, taken together, the Complaint and all the favorable inferences drawn from it allege that some constitutional right(s) must have been violated. The analysis I am required to make is claim specific, and I cannot find a § 1983 claim in any of the individual defendants' conduct. No individual defendant's actions make out a violation of "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Wood v. Kesler,* 323 F.3d 872, 877 (11ᵗʰ Cir. 2003).

I do make one exception: the jailor Gomez, who knew or had to know shoving shackled prisoners is wrong. But, in the words of the Supreme Court, "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor,* 490 U.S. 386, 396 (1989). There was nothing professional about Dean's treatment. Dean may be a

hothead, or a loudmouth, both, or worse.  Even is he is all of that, he was still entitled to be treated like any other prisoner, and it is obvious he wasn't.  But the treatment was not "objectively, sufficiently serious", *Boxer, supra*, to violate the Constitution.

The same is true for Dean's claim of public humiliation.  The treatment he describes, shackles and chains, is routine prisoner security.  Being paraded around the courthouse may not be routine, but I find that any humiliation suffered by Dean was less than that suffered in "public humiliation" cases where no constitutionally protected right was violated, *see, e.g., Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155 (1976).[3]  And, by posting the signs in his front yard, Dean had invited public discussion of the content of his signs, and himself.  It might even be said that Dean humiliated his children as much, if not more, than Gomez humiliated Dean.  Granted, Dean was not acting under color of state law.  I use the analogy to observe that, while Wells and his deputies treated Dean in a thoroughly unprofessional manner, they did not treat him in an unconstitutional manner.

---

[3]  Plaintiff, whose name and photograph appeared on a flyer which was captioned "Active Shoplifters" and which was distributed among merchants by police chiefs, brought class action. The District Court dismissed the complaint and plaintiff appealed. The Supreme Court held that reputation alone does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the due process clause, and something more than simple defamation by the state official must be involved to establish a claim under section 1983; that police chiefs' action in distributing flyer did not deprive plaintiff of any "liberty" or "property" rights secured against state deprivations by the due process clauses; and that the flyer did not deprive plaintiff of right to privacy.  While not exactly on point, Dean's claims for his treatment at the courthouse are analogous to those in *Paul*; each has a strong element of public humiliation.

## VII. <u>JACKSON COUNTY</u>

Under Alabama law, a Sheriff is not an employee of a county and the doctrine of *respondeat superior* does not apply:

> A sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior. A sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office, except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute····

*Parker v. Amerson,* 519 So.2d 442, 442-43 (Ala.1987).

*See also Employees of the Montgomery County Sheriff's Dept. v. Marshall*, 893 So.2d 326,330 (Ala. 2004) (same, citing *Parker*).   A suit against a sheriff in his official capacity is essentially a suit against the State.  *Parker*, 519 so.2d. at 445.[4]

Jackson County is due to be dismissed for Plaintiff's failure to state any claims against it.

---

[4]  The Sheriff was acting as "an arm of the state", *Northern Insurance Co. Of New York v. Chatham County, Georgia*, ____ U.S. ____, No. 04-1618 (April 25, 2006) (Eleventh Amendment immunity does not extend to counties unless the county is acting as an arm of the state).  While Jackson County is not immune under the Eleventh Amendment, the Sheriff is.  Dean's claim against Jackson County requires the imposition of liability on the Sheriff, and therefore also fails.

## VIII.  <u>CONCLUSION</u>

The defenses of Eleventh Amendment Immunity and Qualified Immunity bar the Section 1983 claims against Defendants in this matter.  The remaining Defendants' Motion to Dismiss (doc. 8) all claims will be **GRANTED**.

A separate Order will issue.

**DONE** this 1st day of May, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge